## (August 31, 1981)

■ DAVID BARNES et al., Respondents, v BERNARD GOULD et al., Appellants. — In an action to recover damages for fraud, defendants appeal from an order of the Supreme Court, Westchester County (Dachenhausen, J.), entered September 23, 1980, which denied their motion for summary judgment dismissing the complaint. Order reversed, on the law, with $50 costs and disbursements, defendants' motion for summary judgment is granted, and the complaint is dismissed. The disclaimer and merger clauses in the contract of sale between the parties, which state in pertinent part that the plaintiff purchasers disclaimed reliance on any representation by the defendant sellers as to the "physical condition" of the premises, are sufficiently specific to bar plaintiffs' action based on alleged fraudulent misrepresentations by defendants as to the

structure of the premises, including the boiler and heating systems (cf. *Wittenberg v Robinov*, 9 NY2d 261). Hopkins, J.P., Titone, Gibbons and Rabin, JJ., concur.

Cohalan, J., dissents and votes to affirm the order, with the following memorandum: In this action to recover damages for fraudulently inducing plaintiffs to enter into a contract for the sale of real property, I would affirm the order of Special Term which denied summary judgment to the defendants. I would do so on the authority of *Galgani v Fleming* (56 AD2d 644). As I read them, the merger clauses in paragraphs 25 and 29 of the contract are general, not specific in nature. Consequently, issues of fact are presented requiring a trial. The clauses read: "25. It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation, not embodied in this contract, made by the other. The purchaser has inspected the buildings standing on said premises and is thoroughly acquainted with their condition and agrees to take title 'as is' and in their present condition and subject to reasonable use, wear, tear, and natural deterioration between the date thereof and the closing of title. * * * 29. Seller has not made and does not make any representation as to the physical condition of the premises or personalty conveyed hereby, or with respect to use or occupancy or any other matter or thing affecting or relating to the premises, furnishings or articles of personal property included on this sale except as herein specifically set forth." In a summary judgment motion, the parties are required to "recite all the material facts" (CPLR 3212, subd [b]). Defendant Bernard Gould skirted this requirement in his "answering affidavit", wherein he stated in part that "[t]he statements made by Frank Hausler, engineer for the Plaintiffs, that the 'boiler is doped up on a temporary repair' could not be further from the truth." The Hausler affidavit reads in pertinent part as follows: "[U]pon examining the sections of the boiler, it could be visually seen that three epoxy type plugs were installed in order to prevent it from leaking. These plugs obviously had begun to reopen. These were defective sections, and instead of replacing them they were temporarily repaired by seller and other plugs and patches were contained in the sections. 4. When a boiler is 'doped up' on a temporary repair, it usually holds during the heating season as long as the boiler remains hot. However, when the boiler is cooled down and shut down for the season, the cast iron shrinks (contracts) and the plugs and temporary repairs become loose. The next time the boiler is fired up again, the loose plugs give way and the leak reestablishes itself. 5. The defects set forth above were latent defects which would have been impossible to have detected during the winter season which was prior to the time that the Barnes took title. On the day of my inspection, the jacket to the boiler could not be opened to see the various pipes and mechanisms because the system was in operation." No mention of, or explanation for, the insertion of the epoxy plugs appears in Mr. Gould's affidavit, and since we are dealing with a motion for summary judgment, we deem the contents of the affidavits in opposition to be true. Moreover, with respect to the heating system, the bills produced by the defendants indicate that there was trouble with it as far back as 1974, although a new system was allegedly installed in 1970. Thus a bill of November 1, 1974 shows that on October 5 of the same year, an artisan was called in to "[m]ake temporary repairs to inoperative furnace"; on March 25, 1978 there was a "[n]o heat call"; and again on February 12, 1979 there was a "[n]o heat" call. This culminated in the epoxy episode of February 15, 1979. These bills were not produced by the Goulds until July 24, 1980, during the pendency of the summary judgment motion. Significantly, there is no affidavit in the

record of the heating repair mechanic to explain the reason for the epoxy plug installation. Another fact question was created in the affidavit of Florence Notariaus, the real estate broker who handled the transaction. She stated in part: "I was present at many conversations had between December of 1978 and February 1979 at the premises. At those times Mr. Gould stated to Mr. Barnes that the hot water system and heating system and components and specifically the boiler and hot water systems were relatively new, were in excellent condition, and that the materials were of good quality especially with respect to the mechanical components. Mr. Gould stated to Mr. Barnes that a lot of money would be saved by the buyers because these items were relatively new and the Barnes did not have to worry about them and words of like import. In point of fact, Mr. Gould repeated this to me as recently as only a few weeks ago." The presence of a general merger clause does not bar parol evidence of fraudulent representations in an action to rescind a contract *(Sabo v Delman,* 3 NY2d 155), nor in one for damages *(Danann Realty Corp. v Harris,* 5 NY2d 317). In *Danann* and in *Wittenberg v Robinov* (9 NY2d 261) there were specific disclaimers. As an example, in *Danann* the specific language was that (5 NY2d, at p 320): "'The Seller has not made and does not make any representations as to the *** *expenses, operation* or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth'". Of this clause, the Court of Appeals noted that (5 NY2d, at pp 320-321): "Here, however, plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded. Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations *** The *Sabo* case *(supra)* dealt with the usual merger clause. The present case *** additionally, includes a disclaimer as to specific representations." On this record, therefore, there are questions of fact as to whether plaintiffs should have discovered the epoxy plugs before the contract signing, and the credibility of the Notariaus affidavit, vis-à-vis that of defendant Bernard Gould. I would affirm.