■ CHUN HYE KANG-KIM, Appellant, v MORDECHAY FELDMAN, Also Known as MORTY FELDMAN, et al., Respondents, et al., Defendants.—In an action to recover damages for breach of contract and fraud, the plaintiff appeals from so much of an order of the Supreme Court, Queens County (Lerner, J.), dated June 20, 1985, as granted the defendant Mordechay Feldman's motion for summary judgment dismissing the complaint as against him, and granted the defendant Lawrence G. Wasserman's renewed cross motion for summary judgment dismissing the second cause of action of the complaint as against him.

Order affirmed insofar as appealed from, with one bill of costs.

Where the language of a contract is clear and unambiguous, the intent of the parties must be determined in accordance with that language *(see, e.g., Breed v Insurance Co.,* 46 NY2d 351, 355). In this case, the parties' contract clearly and unambiguously provided that the defendant Feldman would not be liable for any part of the tax liability as a result of the recapture of depreciation pursuant to the Internal Revenue Code *(see,* 26 USC § 1245), incurred after the date of the sale by Feldman to the plaintiff of the stock of 84-21 Enterprises, Inc., a corporation which owned a luncheonette. The contract

provided that Feldman, as the seller, would assume payment of "all of the Corporation's obligations of any kind or nature, due and owing and/or accruing prior to the date of * * * adjustments". With respect to taxes, the contract expressly stated that Feldman agreed to indemnify the plaintiff "from the payment of any of the corporation's obligations incurred by it prior to the adjustment date". The tax liability involved herein was incurred months after the closing and the adjustment date, when the plaintiff sold the corporate assets to a third party.

Furthermore, the only paragraph in the contract which could have implied such a liability on the part of Feldman was deleted by the parties. Thus, Feldman's alleged failure to pay his "proportionate share" of this postclosing tax liability did not constitute a breach of contract, and Trial Term properly granted his motion for summary judgment.

The fact that an alleged subsequent oral statement by the defendant Wasserman, an accountant and a nonparty to the contract, suggested that the parties' intention was to provide for such proportionate liability is irrelevant in view of the contract's integration clause and its clear and unambiguous language (see, UCC 2-202; *Marine Midland Bank-Southern v Thurlow,* 53 NY2d 381, 387). Similarly, the fact that the plaintiff and her attorneys may have misunderstood the plain meaning of the terms of the contract is also irrelevant (see, *Goodison v Goodison,* 66 AD2d 923, 924, *affd* 48 NY2d 786).

The plaintiff's claim that the defendant Wasserman falsely represented to her that Feldman intended to pay his proportionate share of the tax liability on recaptured depreciation fails to state a cause of action. In order to state a cause of action in actual fraud, the plaintiff would have had to have alleged that Wasserman made this representation with the knowledge that the defendant Feldman, in fact, had no such intention (see, *Lanzi v Brooks,* 54 AD2d 1057, 1058, *affd* 43 NY2d 778, *mot to amend remittitur granted* 43 NY2d 947; *Grossberg v Grossberg,* 104 AD2d 439, 440; *Mills Studio v Chenango Val. Realty Corp.,* 15 AD2d 138; *Scaroon Manor Operating Corp. v W. P. & L. Realty Corp.,* 136 Misc 910). In this case, there is no allegation that the defendant Wasserman knew that Feldman never intended to pay his proportionate share of taxes due to recapture of depreciation at the time he allegedly made such representation, and the record in no way indicates that he had such knowledge. Thus, no cause of action for actual fraud has been stated against him.

Moreover, the doctrine of constructive fraud has no bearing

upon the facts of this case. It is true that Wasserman was the accountant for the corporation, the shares of which the plaintiff had purchased, and thus stood in a fiduciary relationship with her. However, his alleged false representation did not concern a matter of accounting strategy, method or practice in which his special knowledge and expertise put him in a superior position to the plaintiff. Consequently, the doctrine of constructive fraud is inapplicable (see, Brown v Lockwood, 76 AD2d 721, 733-734). Rubin, Lawrence and Spatt, JJ., concur.

Eiber, J., concurs to affirm the order insofar as it grants the defendant Lawrence G. Wasserman's renewed cross motion to dismiss the second cause of action of the complaint as against him, but otherwise dissents and votes to modify the order, on the law, by deleting the first decretal paragraph thereof, and denying the defendant Mordechay Feldman's motion for summary judgment dismissing the complaint as against him, with the following memorandum, in which Weinstein, J. P., concurs:

In my view, it was error for Trial Term to have granted the defendant Mordechay Feldman summary judgment upon a record which contains substantial and compelling issues of law and fact concerning his failure to reimburse the plaintiff for taxes incurred as a result of the recapture of depreciation when the plaintiff sold the assets of the corporation. It is an uncontroverted fact that during his tenure, and in his capacity as sole stockholder of this corporation, which operated a luncheonette in Queens County, the defendant Feldman benefited, in the form of a reduced tax liability, by taking depreciation deductions on the corporate assets.

On April 18, 1979, the defendant Feldman sold all of the shares of capital stock of the corporation to the plaintiff. The contract of sale, in pertinent part, provided as follows: "The Purchase Price of $50,000 shall be increased by an amount equal to the 'Specified Assets' of the Corporation hereinafter referred to, and *shall be decreased by a sum equal to all liabilities* of the Corporation, as hereinafter defined" (emphasis added). The contract further defined the corporate liabilities as follows: "The liabilities of the Corporation as of the date of adjustments shall include but not be limited to *all accrued taxes including taxes due to the recapture of depreciation* and the recapture of the investment tax credit *if any, resulting from the liquidation* of the corporation as herein provided" (emphasis added).

On or about August 11, 1983, the plaintiff commenced the

instant action, alleging, *inter alia,* that the defendant Feldman breached the contract of sale by failing and refusing "to pay the Federal, State and Local taxes due and payable by him for income and depreciation recaptured by reason of the sale of his stock to the plaintiff". As a result, Mrs. Kim was ultimately required to pay the total sum of $12,851.48, representing taxes due to the recapture of depreciation together with interest and penalties thereon.

By notice of motion dated February 6, 1985, the defendant Feldman moved for summary judgment dismissing the complaint as against him. His primary contention in support of this motion was that since the sale of stock did not involve a transfer of the corporate assets, he should not be held responsible for the consequences of the recapture of depreciation.

While this argument, at first blush, has theoretical appeal I am nevertheless able to find, upon a careful and studied review of the contact, significant factual questions which cannot fairly be disposed of summarily.

The inclusion of a clause referring to recapture of depreciation in a contract which purports to represent solely a sale of all of the corporate stock clearly evidences that the parties contemplated the eventual transfer of the corporate assets or the liquidation of the corporation. Indeed, the plaintiff effected such a transfer merely 10 months after she purchased the shares of stock from the defendant Feldman. In my opinion, the fact that recapture of depreciation was addressed in the contract raises a substantial factual question as to whether the parties intended that Feldman would remain liable for the corporation's proportionate share of the tax liability due to the recapture of depreciation.

It cannot be disputed that if the sale by Feldman to the plaintiff had involved the transfer of corporate assets, then the corporation would, at the time of sale, have been liable for depreciation recapture. However, since the sale of stock did not trigger the depreciation recapture provisions of the Internal Revenue Code, the only logical explanation for the inclusion of such a provision is that it reflected the parties' understanding that Mr. Feldman would accept a reduced purchase price in an amount equal to the tax liability attributable to depreciation recapture that would have had to have been paid if Feldman had liquidated the corporation or, in the alternative, that he would reimburse the plaintiff at the time of liquidation. The parties deliberately chose to include recapture of depreciation in the clause of the contract which defined the corporate liabilities. By so doing, the parties

manifested an intent to defer the calculation and allocation of responsibility for this tax until such time as the taxable event occurred, that is, when the plaintiff liquidated the corporation or transferred the assets of the corporation, as she did 10 months after purchasing the stock.

In addition to the foregoing, the contract explicitly provided that the purchase price was to be decreased by a sum equal to the liabilities of the corporation, including the tax liability incurred as a result of any depreciation recapture. The plaintiff, however, was asked to and did in fact pay the full purchase price with cash and promissory notes without a concomitant reduction in the purchase price of the tax liability due to depreciation recapture. The fact that the plaintiff never received a credit for the tax on depreciation recapture as provided for in the contract additionally supports the conclusion that the seller agreed to assume responsibility for his pro rata share of the depreciation recapture upon the transfer of the corporate assets. Moreover, the contract additionally contained a provision whereby certain funds were to be held in escrow for a period of 3½ years, to secure the purchaser against the payment of the corporation's obligations. The provision, read in conjunction with other clauses in the contract, lends further support to the conclusion that the parties intended that the plaintiff would receive payment out of such escrow funds or be relieved of the obligation to pay Feldman an amount equal to the tax liability on any depreciation recapture triggered by the future taxable event, and that the parties intended to defer the liability for depreciation recapture and allocate the responsibility therefor when the taxable event occurred. In view of the foregoing, I am compelled to conclude that Trial Term erred in granting the defendant Feldman's motion for summary judgment dismissing the complaint as against him.

With respect to the plaintiff's claim against the defendant Wasserman, it is evident that the plaintiff failed to sufficiently state a cause of action for actual fraud since the complaint does not contain any allegation that Wasserman had been aware that Feldman never intended to pay his proportionate share of the tax liability at the time Wasserman made representations to the contrary. I, therefore, concur with my confreres of the majority to the extent of affirming the award of summary judgment to the defendant Wasserman dismissing the second cause of action as against him.