OPINION OF THE COURT
Joan B. Lefkowitz, J.
This case raises very interesting questions concerning application of caveat emptor to the sale of real property that had previously been subjected to chlordane application.
FACTUAL BACKGROUND
In June 1973 the subject real property, on which is located a one-family residence, was treated for termites, presumably by application of chlordane. A 10-year guaranty to the homeowner was issued by the termite company, Central Termite Control, which was assigned by the homeowner (Elizabeth Gutterman) to the new homeowners (Drs. Vermund and Vargas) on sale of the property in June 1982. On May 3, 1989 Drs. Vermund and Vargas conveyed the subject property to the defendants. At that time the defendants were not given the out-of-date termite guaranty nor were they aware of it or of any termite condition. Defendants first learned about the guaranty after commencement of the action. Prior to the purchase, defendants caused the property to be inspected by Parkway Inspection Services, Inc. (Parkway). That company made a report, dated February 22, 1989, which stated: "4-APPEARANCE OF PREVIOUS TERMITE CONTROL? NO”.
*509 The property consists of a one-family residence with four bedrooms, a two-car garage and basement. The record does not reveal the amount of land on which the building is located. The defendants, both of whom are physicians, resided at the premises for over three years, with their children, until the property was sold to plaintiffs. Defendants aver that they never caused chlordane to be used on the premises. Indeed, its use as a popular chemical for termite control was outlawed in April 1988 before defendants purchased the subject property.
In the spring of 1992 the defendants listed the property for sale. Simultaneously therewith they hired another company, Garrie Pest Control (Garrie), to do an inspection. By report dated April 7, 1992 Garrie said: "evidence of previously TREATED INFESTATION WAS NOTED UNDER KITCHEN DOOR FRAME. NO EVIDENCE OF ACTIVE INFESTATION WAS FOUND. PERIODIC TERMITE INSPECTIONS ARE RECOMMENDED AS RE-INFESTATION CAN AND SOMETIMES DOES OCCUR.”
On April 13, 1992 plaintiff made an offer to purchase the property for $325,000 subject to a satisfactory engineering, radon and termite inspection. Plaintiffs hired an engineer who provided them with a written report on April 16, 1992 wherein termite damage was found. On May 4, 1992 plaintiffs had Garrie recertify their report to Mr. Copland and plaintiffs’ lender. Also, on May 22, 1992 plaintiffs had Parkway reinspect the premises, which was done with the same finding as it previously made regarding no evidence of termite control.
On April 17, 1992, the parties, represented by counsel, executed a contract of sale. The standard contract provided: [In summary, that the purchaser inspected the premises and agreed to purchase it "as is”; all prior understandings were merged in the contract and no one was relying on any statement not contained in the contract; the seller had not made any representations other than those expressed in the contract and is relieved of all responsibility as to the present or future physical condition of the property; and acceptance of the deed shall constitute full compliance except as to matters that specifically survive the closing.]
On July 2, 1992 the sale was consummated and defendants delivered to plaintiff the usual bargain and sale deed with covenants against grantor’s acts.
In May or June 1993 plaintiffs retained a toxicologist who conducted tests in and around the residence and found chlordane present on the property. He recommended that plaintiffs *510 move out of the premises, which they did. In August 1993 the Westchester County Health Department reported on tests it performed at the premises in May 1993, that the level of chlordane found at the property did not constitute a health concern.
On February 1, 1994 plaintiff instituted this action. The complaint contains six causes of action for: (1) rescission based on mutual mistake, (2) rescission based on fraud, (3) damages for fraud, (4) rescission based on constructive fraud, (5) damages for constructive fraud and (6) breach of contract for sale of an uninhabitable residence. The answer consists of general denials, 23 affirmative defenses and 8 counterclaims for damages for defamation and prima facie tort.
In April 1994 plaintiffs commenced remediation of the property by having contaminated soil removed. They claim that the expense of removal has been $50,000 to date.
Defendants move for summary judgment dismissing the complaint upon the grounds, inter alia, caveat emptor, merger, no breach of warranty of habitability is implied on sale of a previously lived-in home, lack of confidential relationship, absence of mutual mistake and, factually, that no chlordane problem exists as evidenced by the Westchester County Department of Health report and an expert’s report and affidavit submitted in support of the motion. Plaintiffs argue that triable issues exist with respect to defendants’ knowledge that requires discovery; also because of differing opinions on the extent of the chlordane problem; and by reason of paragraph 11 (a) of the contract which survived delivery of the deed.
FIRST CAUSE OF ACTION
The first cause of action seeks rescission based on mutual mistake, that the parties were unaware of the chlordane problem.
Rescission premised on mutual mistake is a viable remedy where the parties have not greatly altered their positions. (D’Antoni v Goff, 52 AD2d 973 [3d Dept 1976]; 21 NY Jur 2d, Contracts, § 121; Annotation, Rescission — Mutual Mistake— Realty, 50 ALR3d 1188.) The mistake must be material and fundamental so as to defeat the object of the contract. (Callanan v Keeseville, Ausable Chasm & Lake Champlain R. R. Co., 199 NY 268, 284 [1910]; Clanton v Smith, 170 AD2d 643 [2d Dept 1991], lv denied 78 NY2d 852 [1991]; Babylon Assocs. *511 v County of Suffolk, 101 AD2d 207, 215 [2d Dept 1984].) Rescission for mutual mistake in real property transactions may occur where the status quo is restorable. (Valentine v Richardt, 126 NY 272, 277 [1891]; 91 NY Jur 2d, Real Property Sales and Exchanges, § 138.) The requirement of restoration of the status quo may sometimes be relaxed. (Jones Chems. v City of Binghamton, 26 AD2d 710, 711 [3d Dept 1966], affd 20 NY2d 808 [1967] [unilateral mistake]; K.M.L. Labs. v Hopper, 830 F Supp 159, 164 [ED NY 1993].) Where the precontract status quo cannot be restored but rescission is otherwise appropriate, the court may grant whatever relief it can in equity, with adjustments if necessary. (Ungewitter v Toch, 31 AD2d 583 [3d Dept 1968], affd 26 NY2d 687 [1970]; 91 NY Jur 2d, Real Property Sales and Exchanges, § 150; CPLR 3017 [a]; 3 Weinstein-Korn-Miller, NY Civ Prac ¡ 3017.06.) The deed merger rule does not bar rescission based on mutual mistake. (Larsen v Potter, 174 AD2d 801 [3d Dept 1991].)
Nonetheless, whether a mutual or unilateral mistake fundamental to the purpose of the contract has been made is determined by an objective test. (First Regional Sec. v Vilella, 84 Misc 2d 790 [Civ Ct, NY County 1975], affd 88 Misc 2d 81 [App Term, 1st Dept 1976]; see, Ryan v Boucher, 144 AD2d 144 [3d Dept 1988].)
Where a party bears the risk of a condition or problem, such as where he goes forward with a deal although he only has limited knowledge of the problem, the right to rescind is waived. (Restatement [Second] of Contracts § 154; see, Juliano v McEntee, 150 AD2d 524 [2d Dept 1989].) Here, plaintiffs were aware of a prior termite problem and treatment, conducted their own termite inspection, accepted the property "as is”, with disclaimers in the contract as to physical condition. Under those circumstances, absent fraud, the plaintiffs cannot proceed in conscious ignorance (Restatement [Second] of Contracts § 154, comment c, at 404) and then seek rescission after having implicitly taken the risk of discovery of a postclosing defect. (In re Schenck Tours, 69 Bankr 906 [ED NY 1987], affd on opn below 75 Bankr 249 [ED NY 1987]; see, Raner v Goldberg, 244 NY 438, 441 [1927]; Hill Holdings v Lowman, 226 Conn 748, 628 A2d 1298 [Sup Ct, Conn 1993] [buyer knew of existence of underground tanks but not of contamination].)
Accordingly, as the court finds that no fraud occurred (discussed infra), the first cause of action lacks merit and is dismissed.
*512 THE SECOND, THIRD, FOURTH AND FIFTH
CAUSES OF ACTION
These causes of action are based on alleged fraud or constructive fraud and seek rescission or damages.
Rescission is an appropriate remedy for fraud, innocent or otherwise, as the transaction is voidable and damages may also be sought. (1A Warren’s Weed, New York Real Property, Contracts, § 26.04; 91 NY Jur 2d, Real Property Sales and Exchanges, § 37; Prosser and Keeton, Torts § 105 [5th ed]; CPLR 3002 [e].)
Generally, absent misrepresentation or concealment, a vendor is not liable to a vendee for a latent defect discovered after the sale as the rule of caveat emptor applies. (Annotation, Vendor’s Liability — Damage After Transfer, 18 ALR4th 1168.) A general merger clause in a contract is ineffective to bar parol proof of oral representations constituting fraud, but a specific disclaimer clause is effective because in the latter case the party claiming reliance on the representation is precluded from doing so. (Citibank v Plapinger, 66 NY2d 90 [1985], rearg denied 67 NY2d 647; Danann Realty Corp. v Harris, 5 NY2d 317 [1959]; Sabo v Delman, 3 NY2d 155 [1957]; 6 Corbin, Contracts § 1319; 5 Williston, Contracts § 811 [3d ed]; 1A Warren’s Weed, New York Real Property, Contracts, § 15.03.) Whether a clause is sufficiently specific so as to bar oral proof is a question to be resolved by the court. (Cf., General Obligations Law § 15-301 [1]; Perkins v Melita, 155 AD2d 903 [4th Dept 1989], lv denied 75 NY2d 707 [1990].) Similarly, use of the phrase "as is” in the contract may or may not bar a claim for fraud in the inducement. (Annotation, Construction and Effect of Provision in Contract for Sale of Realty By Which Purchaser Agrees to Take Property ’As Is” or in Its Existing Condition, 8 ALR5th 312; Callahan v Miller, 194 AD2d 904 [3d Dept 1993]; Leon Co. v The Towers, 194 AD2d 600 [2d Dept 1993]; Weiss v Shapolsky, 161 AD2d 707 [2d Dept 1990]; Caramante v Barton, 114 AD2d 680 [3d Dept 1985]; Galgani v Fleming, 56 AD2d 644 [2d Dept 1977]; see, Taylor v Heisinger, 39 Misc 2d 955 [Sup Ct, Suffolk County 1963]; 1 Rasch, New York Law and Practice of Real Property § 21:25 [2d ed]; 7 Powell on Real Property, ]f 938.6 [5]; id., vol 6A, fl 883 [11] [d].)
Furthermore, the principle of law that all prior representations, written or oral, merge on delivery of the deed, except as to those items to survive the closing or upon collateral under *513 taking (Suffolk v Applied Digital, 78 NY2d 383, 387 [1991]; Disbrow v Harris, 122 NY 362 [1890]; Marino v Dwyer-Berry Constr. Corp., 146 AD2d 751 [2d Dept 1989]; Senter v Golden, 154 NYS2d 731 [App Term, 2d Dept 1956]; 43 NY Jur 2d, Deeds, § 215; 1 Rasch, New York Law and Practice of Real Property § 24:180 [2d ed]; see, Davis v Weg, 104 AD2d 617 [2d Dept 1984]), does not bar claims based upon latent defects, not discoverable at the time of closing. (Petrick v Cedarwood Homes, NYLJ, July 24, 1972, at 10, col 5 [App Term, 2d Dept]; Staff v Lido Dunes, 47 Misc 2d 322 [Sup Ct, Nassau County 1965]; contra, Sklarsky v Lawrence Constr. Corp., 28 Misc 2d 391 [Sup Ct, Nassau County 1961].)
The essence of a fraud claim is a representation that is known to be false, uttered with intent to deceive, upon which the other party relies to his detriment. (Barclay Arms v Barclay Arms Assocs., 74 NY2d 644 [1989]; Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112 [1969]; see, 2 NY PJI 83 [1995 Supp].) Fraud must be proven “by the most satisfactory evidence” (91 NY Jur 2d, Real Property Sales and Exchanges, § 38, at 105) and the burden of proof "is met by clear and convincing evidence, a standard higher than a fair preponderance of the evidence”. (2 NY PJI 83, op. cit.; Chimart Assocs. v Paul, 66 NY2d 570, [1986]; Callahan v Miller, 194 AD2d 904, supra; 60 NY Jur 2d, Fraud and Deceit, § 228.)
For rescission, the plaintiffs are not required to prove that defendants intended to deceive. (Ultramares Corp. v Touche, 255 NY 170, 186 [1931].)
Constructive fraud requires a confidential relationship or where one party had superior knowledge over the other. (Chun Hye Kang-Kim v Feldman, 121 AD2d 590 [2d Dept 1986]; Brown v Lockwood, 76 AD2d 721, 731 [2d Dept 1980]; see, Stambovsky v Ackley, 169 AD2d 254 [1st Dept 1991] [superior knowledge of paranormal phenomenon].) "Two kinds of fraud are recognized in our jurisprudence; actual fraud, involving scienter — the intention to deceive, and constructive fraud, not involving wilfull intent or tantamount to negligent misrepresentation.” (Urbahn v Town of Greenburgh, Sup Ct, Westchester County, Jan. 30, 1978, Gagliardi, J., index No. 2945/77, at 6, rearg Mar. 21, 1978, affd on opn below 70 AD2d 655 [2d Dept 1979].)
At bar, there was no misrepresentation of fact regarding termites or chlordane, plaintiffs had access to the pertinent information and defendants informed plaintiffs of all they *514 knew on the subject prior to the closing. Under the circumstances, the subject claims do not lie. (Mehta v Mehta, 196 AD2d 842 [2d Dept 1993]; Mariani v Dyer, 193 AD2d 456 [1st Dept 1993], lv denied 82 NY2d 658 [1993]; Kurz v Nicolo, 125 AD2d 993 [4th Dept 1986].)
Furthermore, the real question presented is whether a vendor must disclose information about chlordane use on the property if he is aware of such use. (Annotation, Vendor’s Obligation to Disclose to Purchaser of Land Presence of Contamination from Hazardous Substances and Wastes, 12 ALR5th 630.) If the vendor does not affirmatively conceal a property’s defect and makes no half-truth about the condition thereof (Tahini Invs. v Bobrowsky, 99 AD2d 489 [2d Dept 1984]; Mossier v Smit, 279 App Div 941 [2d Dept 1952], appeal dismissed 304 NY 719 [1952]), the vendor is generally not liable in fraud. (Annotation, Vendor’s Nondisclosure of Conditions, 141 ALR 967; Cause of Action Against Seller For Fraudulent Misrepresentation or Nondisclosure of Condition of Real Property, 12 COA 557 [1987].) "Nondisclosure unaccompanied by some act or conduct which deceives the plaintiff is not a representation”. (2 NY PJI 86 [1995 Supp].) Mere silence alone is insufficient, particularly where the plaintiff is on notice of a condition (termites) prior to closing and fails to discover the severity of the problem. (East 15360 Corp. v Provident Loan Socy., 177 AD2d 280 [1st Dept 1991]; Moser v Spizzirro, 31 AD2d 537 [2d Dept 1968], affd 25 NY2d 941 [1969].) In Perin v Mardine Realty Co. (5 AD2d 685 [2d Dept 1957], affd 6 NY2d 920 [1959]) where the vendor did not volunteer facts regarding the location of a sewer, the Court held: "The seller was under no duty to speak. The parties dealt at arm’s length, and the mere silence of the seller, without some act or conduct which deceived the purchaser, does not amount to a concealment that is actionable as an active fraud.” (5 AD2d 685, supra.) A similar ruling was made in London v Courduff (141 AD2d 803 [2d Dept 1988], lv dismissed 73 NY2d 809 [1988]), where the vendor did not reveal that a vacant lot had previously been used as a landfill. The Court reiterated its holding in Perin v Mardine Realty Co. (supra) and added: "The buyer has the duty to satisfy himself as to the quality of his bargain pursuant to the doctrine caveat emptor, which in New York State still applies to real estate transactions.” (141 AD2d, at 804, supra.)
Dependent upon the intention of the parties, the acts or conduct of each and their expectations, nondisclosure of a *515 particular defect known to the seller may or may not constitute actionable fraud. (Annotation, Vendor’s Concealment of Flooding Danger, 90 ALR3d 568 [general rule: liability found in fraud]; contra, Salvas v McEuen, 75 Ore App 21, 704 P2d 1166 [Ct App 1985], review denied 300 Ore 332, 710 P2d 147 [1985]; Annotation, Vendor — Filled Ground — Nondisclosure, 80 ALR2d 1453 [generally liable in fraud]; Tahini Invs. v Bobrowsky, 99 AD2d 489, supra [misrepresentation]; Annotation, Vendor’s Duty — Termite Infestation, 22 ALR3d 972 [conflict in decisions as to vendor’s liability for failure to disclose termite condition with majority applying caveat emptor]; Smith v Fitzsimmons, 180 AD2d 177 [4th Dept 1992] [flea infestation, misrepresentation actionable]; Gegeas v Sherrill, 218 Md 472, 147 A2d 223 [Ct App 1958]; Swinton v Whitinsville Sav. Bank, 311 Mass 677, 42 NE2d 808 [Sup Ct 1942]; Miles v McSwegin, 58 Ohio St 2d 97, 388 NE2d 1367 [Sup Ct 1979].) One learned authority has observed that the current state of the law permits a vendor to sell a home infested with termites, with impunity (Prosser and Keeton, Torts § 106, at 737-738 [5th ed]) unless a confidential relationship existed.
In Brass v American Film Technologies (987 F2d 142, 150 [2d Cir 1993]), the court said: "A duty to speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them, for under New York law the ancient rule of caveat emptor is still alive and well. See, e.g., Moser v. Spizzirro, 31 A.D.2d 537, 537, 295 N.Y.S.2d 188 (2d Dep’t 1968), aff’d, 25 N.Y.2d 941, 305 N.Y.S.2d 153, 252 N.E.2d 632 (1969); Perin v. Mardine Realty Co., 5 A.D.2d 685, 685, 168 N.Y.S.2d 647 (2d Dep’t 1957), aff’d, 6 N.Y.2d 920, 190 N.Y.S.2d 995, 161 N.E.2d 210 (1959). New York recognizes a duty by a party to a business transaction to speak in three situations: first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth, see Junius Constr. Corp. v. Cohen, 257 N.Y. 393, 400, 178 N.E. 672 (1931) (Cardozo, J.); second, when the parties stand in a fiduciary or confidential relationship with each other, see Allen, 945 F.2d at 45; and third, 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.’ Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir.1984); accord Young v. Keith, 112 A.D.2d 625, 627 (3rd Dep’t 1985).”
*516 Viewed differently, the sufficiently specific disclaimer clause (as to physical condition of the property), the merger clause, the integration language and "as is” provision of the contract and fact of plaintiffs’ inspection of the premises before closing is sufficient to bar any claim as to actual or constructive fraud. (Citibank v Plapinger, 66 NY2d 90, supra; Callahan v Miller, 194 AD2d 904, supra; Weiss v Shapolsky, 161 AD2d 707, supra; Barnes v Gould, 83 AD2d 900 [2d Dept 1981], affd 55 NY2d 943; Taylor v Heisinger, 39 Misc 2d 955, supra.)
Nevertheless, there are occasions where the deficiencies in the real property are so dangerous as to impose a duty on the seller to inform the buyer. (Young v Keith, 112 AD2d 625 [3d Dept 1985] [sewer and water problems]; Restatement [Second] of Torts § 353 [dangerous condition]; Restatement [Second] of Contracts § 161 [equivalent to misrepresentation] [see, illustration 5 regarding termites, which the Restatement says if concealed results in voidable contract, a position that does not square with the majority of decisions]; see, Annotation, 22 ALR3d 972, op. cit). Whether, on all of the circumstances presented, there is a duty to disclose is a question of law for the court. (2 NY PJI 87 [1995 Supp]; Restatement [Second] of Torts § 551, comment m.)
While a triable issue of fact might exist herein as to the severity of the chlordane condition, no such issue is demonstrated concerning defendants’ knowledge of the existence of the problem. Yet, even if they had known of the condition, they were under no duty to reveal it. Plaintiffs chose to go forward with the deal knowing that a termite condition once existed, not knowing the present state of the termite problem and without attempting to protect themselves by adding a rider regarding the termite condition, to survive the delivery of the deed. (See, authorities cited at pages 512-513, supra; Blankenship v Ogle, 418 So 2d 126 [Ala 1982].)
Accordingly, the second through fifth causes of action are dismissed.
SIXTH CAUSE OF ACTION
The sixth cause of action is for breach of contract in the nature of breach of warranty that the house was habitable. There is no implied warranty of habitability in the sale of a previously owned home. (Real Property Law § 251; Carter v Cain, 112 AD2d 2 [4th Dept 1985]; Young v Keith, 112 AD2d 625, supra; see, Caceci v Di Canio Constr., 72 NY2d 52, 57 *517 [1988] [common-law housing merchant warranty implied in sale of new homes] [now statutory, General Business Law § 777-a]; 7 Powell, Real Property, lffl 938.2, 938.6 [2]; 91 NY Jur 2d, Real Property Sales and Exchanges, §§45, 46; 2 Harvey, Law of Real Property and Title Closing, § 471; Annotation, Defective Home — Vendor’s Liability, 25 ALR3d 383; 7 Williston, Contracts § 926; id., vol 11, § 1399A [3d ed 1961].)
The contract does not include a warranty of habitability and there were no parol representations of habitability established at bar.
Furthermore, plaintiffs’ reliance on paragraph 11 (a) of the contract, which survived the closing, is without merit. Paragraph 11 (a) merely relates to notices of health violations. None exist.
Consequently, the sixth cause of action must be dismissed.
CONCLUSION
Absent a duty that is breached, defendants are not liable. (Pulka v Edelman, 40 NY2d 781 [1976].) Here, it has been established that defendants had no knowledge of the application of chlordane, while plaintiffs were aware of termite treatment prior to closing. None of the claims asserted are actionable on the facts presented herein. (White v Long, 204 AD2d 892 [3d Dept 1994] [underground tanks known to parties but not extent of contamination].) Additionally, for the reasons stated at pages 514-516 (supra), defendants were under no duty to reveal the prior application of chlordane, if they knew of it.
The counterclaims are severed.