(61 Misc. Rep. 469.)

### HOLLAND TORPEDO BOAT CO. v. NIXON.

(Supreme Court, Trial Term, New York County.    December, 1908.)

1. DAMAGES (§ 80*)—BREACH OF CONTRACT—LIQUIDATED DAMAGES.

    Those damages only are positively liquidated which the parties, after breach of the contract and with full knowledge of the facts, agree upon as a measure of damages. In other cases the question is whether the payments agreed upon are proportionate to the actual loss.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 170–175; Dec. Dig. § 80.*]

2. DAMAGES (§ 85*)—LIQUIDATED DAMAGES—WAIVER.

    Where a party to a contract is responsible in part for delay in completion, and has waived completion at the date fixed in the contract, any provision for liquidated damages is abrogated, and the party in default is liable only for actual damages, on failure to complete within a reasonable time.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 187; Dec. Dig. § 85.*]

Action by the Holland Torpedo Boat Company against Lewis Nixon. Verdict for plaintiff. Motion for new trial granted on condition.

Norman G. Johnson (David B. Luckey, of counsel), for plaintiff.

William H. Jackson (William M. Bennett, of counsel), for defendant.

DOWLING, J. It is not necessary to the disposition of the motion for a new trial herein that it should be finally determined whether the per diem sums contracted to be paid in case of failure to complete within the stipulated time are to be regarded as liquidated damages or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as penalties. But it is well to call attention to the facts which have been established, and which have a bearing, not only upon this question, but as well upon the other phases of the case to be hereafter referred to. On July 13, 1900, the Holland Torpedo Boat Company made a contract with Lewis Nixon for the construction of a submarine torpedo boat of the "Holland" type at an agreed price, the same to be delivered completely finished within six months thereafter. Other vessels of the same nature were awarded for construction to Nixon upon substantially the same terms. The building of such boats being largely experimental at that time, not only were the boats not completed within the contract time, but Nixon had a large claim for extra work against the company, arising out of the changes found necessary and ordered to be made from time to time as the work progressed. As the result of negotiations a new contract was entered into between the parties May 16, 1901, by which Nixon agreed to complete the six submarine boats still under construction and to deliver them on days certain, the first delivery to take place June 10, 1901, and the last October 12, 1901. Time was made of the essence of the contract, and payments of $50 per day, excepting Sundays, for the first week's delay on each boat, and of $100 per day thereafter, were provided for as liquidated damages in case of delay. Nixon further agreed to completely finish the boats, including the installing of certain portions thereof and of machinery therein which under the first contract the company was obliged to furnish, and he further agreed to waive any claim then accrued for extra work, besides doing other things enumerated with particularity. The company agreed in return therefor to pay him the additional sum of $100,000. Five of these boats were being built by the company for the United States under a contract whereby it was provided that:

"In case the completion of the vessels as aforesaid shall be delayed beyond the periods herein prescribed, deductions may, in the discretion of the Secretary of the Navy, be made from the contract price of each vessel so delayed at the rate of $25 a day, excepting Sundays, during the first month's delay, and thereafter at the rate of $75 a day, excepting Sundays, during the continuance of such delay."

In the company's contract with Nixon it was provided that, in the event of the work being delayed by general strikes over which Nixon had no control, the company would "take the same into consideration in enforcing said liquidated damages for delays"; it being understood that Nixon should use his best efforts in assisting the company to obtain extension of time from the government. As a matter of fact, various extensions of time were obtained by Nixon for the company from the government, and, when the boats were finally delivered and accepted after their trial trips, the contract prices were paid in full to the company, without deduction of any kind; the extensions obtained by Nixon having carried the times for performance of the main contract beyond the dates of actual delivery. Regardless of this, the company seeks to hold Nixon for the delay in delivery under his subcontract.

While the payment to the government in case of delay was called a "penalty," that language, of course, is not controlling, any more than

is the term "liquidated damages," used in the Nixon contract. While the distinction between a penalty and liquidated damages is hard to draw, in view of the conflicting decisions, it may safely be said that the only liquidated damages, which can positively and unequivocally be regarded as such, are those which the parties, after the breach of the contract and with full knowledge on both sides of its consequences, agree upon as the measure of the damage sustained. In all other cases it would seem as though, regardless of the terminology, the question decisive of the matter is: Are the payments provided for in case of nonperformance or tardy performance measurably proportionate to the actual loss sustained? If the answer be in the affirmative, then such payments are liquidated damages. In the case at bar there is no proof of any actual loss sustained; on the contrary, it affirmatively appears that payment in full was made on the main contract. It further appears that the per diem payments provided for in the subcontract were far in excess of those contained in the main contract. Not only is no loss proven, but the only suggestions of loss to plaintiff are the purely speculative possibility of an appropriation by Congress had the boats been finished sooner, and the loss of interest on the purchase price of the boats, which latter item is not fairly proportioned to the recovery sought.

But, even if the sums provided for in case of delay in completion be regarded as liquidated damages, and not as penalties, I am of the opinion that so much of the verdict herein as awards plaintiff $30,000 damages for failure to deliver the boats in time cannot stand. Plaintiff claimed the sum of $68,000 as the aggregate of the amounts due from defendant, computed at the per diem rates for delays on each boat. It appeared upon the trial that, after the time set for completion and delivery, certain "purchase orders," also referred to as "extra orders," were given, the result of which, it was claimed, was to still further delay the completion of the boats. Plaintiff denied that the orders caused any such delay. This issue was left to the jury, which found for the plaintiff upon this count to the extent only of $30,000, thus determining that more than one-half of the delay in completion was due to plaintiff's own acts, which finding found ample support in testimony as to the serious character of some of the changes made, involving much loss of time. It is well settled that, where one party to a contract is himself responsible in whole or in part for a delay in completion, and has by his acts waived completion at the date fixed by the contract, the provision for liquidated damages is abrogated, the question becomes one of completion within a reasonable time under all the circumstances, and actual damages only can be recovered; there being no apportionment possible of liquidated damages. Willis v. Webster, 1 App. Div. 301, 37 N. Y. Supp. 354; Dodd v. Churton, 1 Q. B. D. 562; 19 Am. & Eng. Encyc. of Law (2d Ed.) 423; Thilemann v. City of New York, 82 App. Div. 136, 81 N. Y. Supp. 773; Callanan Road Improvement Co. v. Village of Oneonta, 117 App. Div. 332, 101 N. Y. Supp. 1056; Cornell v. Standard Oil Co., 91 App. Div. 345, 86 N. Y. Supp. 633; Dady v. Mayor, 57 Hun, 456, 10 N. Y. Supp. 819; Weeks v. Little, 89 N. Y. 566; Smith v. Gugerty, 4 Barb. (N. Y.) 614;

Bigler v. New York & S. B. F. & S. Co., 52 Hun, 613, 5 N. Y. Supp. 347; Green v. Haines, 1 Hilt. (N. Y.) 254.

The remaining items of plaintiff's recovery are based on a different claim and state of facts. They are amounts for which plaintiff claims to be entitled to be reimbursed by reason either of an oral agreement or under the terms of the written contract. The disputed questions of fact arising with respect thereto have been resolved by the jury in plaintiff's favor. The fact that it did not recover the full amount of its claim thereupon furnishes no ground for setting aside the recovery. There was a fair issue presented, not only as to the making of the oral agreement, but also as to the amounts actually expended and as to how much thereof was properly chargeable against defendant. I see no reason for disturbing the jury's findings in these particulars.

The motion for a new trial will therefore be granted, unless plaintiff within 10 days files a stipulation consenting to the reduction of said verdict to the sum of $18,482.41, in which event the motion will be denied, without costs.

Judgment accordingly.