BABYLON ASSOCIATES, a Joint Venture, Respondent, v COUNTY OF SUFFOLK, Appellant, and AMERICAN REINSURANCE COMPANY et al., Respondents.

Second Department, April 30, 1984

APPEARANCES OF COUNSEL

*David J. Gilmartin, County Attorney* (*Stuart, Zavin, Sinnreich & Wasserman* [*Jonathan Sinnreich* and *Melinda Socal*] of counsel), and *Paul, Weiss, Rifkind, Wharton & Garrison* for appellant. (One brief filed.)

*Sacks, Montgomery, Pastore & Levine, P. C.* (*Harry P. Sacks, Stuart M. Levine* and *Scott D. St. Marie* of counsel), for Babylon Associates and others, respondents.

### OPINION OF THE COURT

*Per Curiam.*

In 1970, the Suffolk County Legislature authorized construction of a massive communal waste disposal system known as the "Suffolk County Sewer District No. 3". The purpose of the project was to provide communal waste disposal service to an area of approximately 57 square miles in southwest Suffolk County. The instant action involves the construction of the sewage treatment plant commonly known as the "Bergen Point Water Pollution Control Plant" (Bergen Point Plant). In July, 1974, the general construction contract for the Bergen Point Plant was awarded to Terminal Construction Corporation (Terminal). Under the terms of the contract, Terminal would receive a sum in excess of $61,000,000 for its performance. The contract required Terminal to post a faithful performance bond payable to the County of Suffolk (county) in a sum not less than the contract price, to be conditioned upon the faithful performance of all of the covenants and stipulations of the contract. Terminal thereafter furnished an

acceptable performance bond to the county under which certain parties were named sureties.

In July, 1975, upon the consent and approval of the county, Terminal assigned its right, title and interest in, and all its obligations under the afore-mentioned contract to Babylon Associates (Babylon), a joint venture consisting of Terminal, the Dic Concrete Corporation, and Underhill Construction Corporation. In furtherance of its obligations under the contract, Babylon hired Lizza Industries, Inc. (Lizza), as subcontractor, to install the necessary reinforced "102 inch" pipe which was to be utilized in conveying the sewage collected in the sewer district into the Bergen Point Plant. Subsequent thereto, Lizza subcontracted with Clearview Concrete Products Corp. (Clearview) to manufacture the "102 inch" pipe according to the specifications of Babylon's contract with the county.

As the result of an investigation conducted by the Federal Bureau of Investigation (FBI) in 1978, Clearview was convicted in the Eastern District of New York of violating section 371 of title 18 of the United States Code for defrauding the United States in making, testing and repairing defective concrete pipe utilized by Babylon in construction of the Bergen Point Plant (*United States v DeLillo*, 620 F2d 939). Because of Clearview's conviction, the Federal Environmental Protective Agency (EPA) and the New York State Department of Environmental Conservation (DEC) allegedly withheld promised funding from the county until July, 1982 at which time the county was forced to accept a $5.2 million reduction in the total grants from these agencies. In addition, certain governmental regulatory agencies, including the FBI, insisted that the county prove the structural soundness of all reinforced concrete pipes which had been installed prior to the FBI's investigation of Clearview's activities. The county was allegedly required to expend substantial sums for widespread testing of the concrete pipes. These tests disrupted and delayed further construction of the Bergen Point Plant.

In 1981, Babylon instituted the instant action seeking to recover a sum in excess of $70,000,000 for extra work and expenses allegedly caused by the delay and interference on

the part of the county in the performance of Babylon's obligations under the contract. In its answer, the county asserted a number of affirmative defenses and counterclaimed for damages in excess of $75,000,000 for breach of contract. The portions of the county's answer relevant to this appeal are as follows:

(1) *Twenty-Second Affirmative Defense:*

The county alleges Babylon was responsible for the criminal acts of its subcontractor Clearview and by reason thereof is equitably estopped from asserting any claims against the county either on the contract or in *quantum meruit.*

(2) *Twenty-Third Affirmative Defense:*

The county alleges that Babylon's damages, if any, resulted from the wrongful and criminal acts and omissions of its subcontractor Clearview for which Babylon was responsible.

(3) *First Counterclaim:*

The county alleges that Babylon failed to complete construction within the agreed contract completion date and as a result thereof the county is entitled to recover liquidated damages pursuant to the contract in the sum of $500 per day for every day Babylon is in default.

(4) *Third Counterclaim:*

In view of Babylon's alleged failure to timely complete the construction contract, the county seeks to recover actual damages of not less than $10,000,000.

(5) *Sixth Counterclaim:*

The county alleges that as a result of subcontractor Clearview's criminal acts for which Babylon was responsible, the county is entitled to recover all sums paid to Babylon under the contract, plus interest and attorneys' fees.

(6) *Seventh Counterclaim:*

The county seeks compensatory damages in the sum of $1,658,822 for expenses incurred because of Clearview's criminal activities as well as punitive damages in the sum of $10,000,000.

In its eighth counterclaim, the county impleaded Babylon's sureties as additional counterclaim defendants and seeks to hold the sureties jointly and severally liable under the terms of the performance bond for any judgment

awarded to the county by reason of any of its counterclaims against Babylon.

Prior to serving its reply to the county's counterclaims, Babylon moved for an order dismissing the county's twenty-second and twenty-third affirmative defenses on the ground that a defense is not stated (CPLR 3211, subd [b]); dismissing the county's third, sixth and eighth counterclaims on the ground that a defense is founded on documentary evidence (CPLR 3211, subd [a], par 1), and dismissing the county's sixth, seventh and eighth counterclaims for failure to state a cause of action (CPLR 3211, subd [a], par 7). The county cross-moved for an order, *inter alia,* granting partial summary judgment on the issue of liability only on its sixth and seventh counterclaims and on its twenty-second and twenty-third affirmative defenses.

Special Term granted Babylon's motion in its entirety and denied that branch of the county's cross motion seeking partial summary judgment.

■ With respect to the county's twenty-second and twenty-third affirmative defenses, and the sixth and seventh counterclaims, Special Term held that the terms of the parties' contract could not be interpreted to hold Babylon responsible for the illegal conduct of its subcontractor. We disagree.

The relevant portions of Babylon's contract with the county which deals with the contractor's responsibility for its subcontractors provide as follows:

"9. Liability of Contractor

"The Contractor shall do all of the work and furnish all labor, materials, tools, and appliances, except as otherwise herein expressly stipulated, necessary or proper for performing and completing the work herein required in the manner and within the time specified in the Contract Documents. The mention of any specific duty or liability imposed upon the Contractor shall not be construed as a limitation or restriction of any general or other liability or duty imposed upon the Contractor by this Contract, said reference to any specific duty or liability being made merely for the purpose of explanation.

"The Contractor shall provide all items, materials, articles, operations or methods listed, noted, mentioned or scheduled on the drawings or in any of the Contract Documents, including all labor, material, plant, equipment, transportation and incidentals required and necessary for the completion of the work, and unless specifically shown otherwise herein all plant, equipment and other works shall be complete, in place and in operation. The Contractor shall be responsible to the Owner for the acts and omissions of all his employees and all Subcontractors, their agents and employees, and all other persons performing any of the work under a contract with the Contractor * * *

"13. Subcontractors

"No subcontractor will be recognized as such, and all persons engaged in the work of construction will be considered as employees of the Contractor and he will be held responsible for their work, which shall be subject to the provisions of the Contract * * *

"23. Subcontractors

"The Contractor shall notify the Owner in writing of the names of all Subcontractors he proposes to employ on the contract and shall not employ any Subcontractors until the Owner's approval in writing covering such Subcontractors has been obtained.

"The Contractor agrees to be fully and directly responsible to the Owner for all acts and omissions of his Subcontractors and of any other person employed directly or indirectly by the Contractor or Subcontractors, and the contract obligation shall be in addition to the liability imposed by law upon the Contractor.

"Nothing contained in the Contract Documents shall create any contractual relationship between any Subcontractor and the Owner. It shall be further understood that the Owner will have no direct relations with any Subcontractor. Any such necessary relations between Owner and Subcontractor shall be handled by the Contractor.

"The Contractor agrees to bind every Subcontractor (and every Subcontractor of a Subcontractor, etc.) by all terms of the Contract Documents as far as applicable to the Subcontractor's work unless specifically noted to the contrary in a

subcontract approved in writing as adequate by the Owner".

These contractual provisions, fairly interpreted, indicate that the liability for damages and delays occasioned by a subcontractor's acts, criminal or otherwise, may lie with the contractor, Babylon. While, admittedly, Clearview was a remote subcontractor with whom Babylon had limited contact, the terms of the contract provide that the contractor would be fully and directly responsible to the county for the acts or omissions of its subcontractors and of any other person employed directly or indirectly by Babylon or its subcontractors. Thus, it is clear that a triable issue of fact exists as to whether the parties intended Babylon's liability under the afore-mentioned contractual provisions to include responsibility for the *criminal* acts of its subcontractors. Accordingly, it was premature for Special Term to decide this issue on a motion to dismiss.

■ The question next presented is, assuming Babylon is contractually responsible for Clearview's criminal acts, whether the county is entitled to the remedies sought in the twenty-second and twenty-third affirmative defenses and in the sixth and seventh counterclaims. As stated previously, the twenty-second affirmative defense set forth by the county alleges Babylon is equitably estopped from asserting any claims against the county for delays and damages caused by Clearview's criminal acts. The elements of the estoppel defense are "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position" (*Airco Alloys Div. v Niagara Mohawk Power Corp.*, 76 AD2d 68, 81-82; see, generally, 21 NY Jur, Estoppel, § 21, p 27). In this case, the county does not allege that Babylon had knowledge of or concealed Clearview's illegal activities in the manufacturing, testing and repairing of the reinforced concrete piping. In view thereof, the county's twenty-second affirmative defense must fall. However, the county's twenty-third affirmative defense,

which alleges that Babylon's damages, if any, resulted from the illegal acts of its subcontractor Clearview, for which Babylon was contractually responsible, must be reinstated.

■ In its sixth counterclaim, the county alleges that because of Clearview's fraudulent conduct in the performance of the contract, the county is entitled to rescission of the entire contract and restitution for all sums paid to Babylon thereunder. In order to justify the intervention of equity to rescind a contract, a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof (*Callanan v Keeseville, Ausable Chasm & Lake Champlain R. R. Co.,* 199 NY 268, 284). If rescission is based upon a breach of the contract, the breach must be "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract" (*Callanan v Keeseville, Ausable Chasm & Lake Champlain R. R. Co., supra,* p 284; *Canfield v Reynolds,* 631 F2d 169, 178). It is clear that Babylon's breach of the contract which was caused by Clearview's illegal conduct was not willful since, as the county concedes, Babylon neither had knowledge nor participated in the subcontractor's criminal activity. Moreover, while the concrete pipes were an integral part of the sewage treatment facility, we do not find that the breach was so substantial and fundamental as to necessarily defeat the very purpose of the parties' contract (*Callanan v Keeseville, Ausable Chasm & Lake Champlain R. R. Co., supra; Fink v Friedman,* 78 Misc 2d 429, 435). In any event, the county has an adequate remedy at law, namely recovery of money damages which were caused by Clearview's illegal activities (*Boyle v Kelley,* 42 NY2d 88, 91; *Fink v Friedman, supra,* p 435).

The county relies upon two cases, namely, *McConnell v Commonwealth Picture Corp.* (7 NY2d 465) and *S. T. Grand, Inc. v City of New York* (32 NY2d 300) to support its position that total forfeiture of all sums paid to Babylon is an appropriate remedy in this case. These cases are distinguishable. In both *McConnell v Commonwealth Picture*

*Corp.* (*supra*) and *S. T. Grand, Inc. v City of New York* (*supra*), the fraudulent conduct complained of was performed by the very party seeking to enforce the contract. In this case, although Babylon may be contractually responsible for the fraudulent acts of its subcontractors, the harsh remedy of total forfeiture should, in our opinion, be limited to situations where the party seeking to enforce the contract was directly involved in or had knowledge of the illegal activity. We acknowledge that in *United States v Mississippi Val. Co.* (364 US 520) the United States Supreme Court denied enforcement of a public contract and ordered total forfeiture of all sums paid to the contractor where a third party to the transaction over whom the contractor had no control violated the Federal conflict of interest statutes in procuring the contract. In reaching its decision, the Supreme Court placed great emphasis on the policy considerations and the legislative objectives sought to be achieved by the Federal conflict of interest laws (*United States v Mississippi Val. Co., supra,* p 563). That case is clearly distinguishable because the decision was based on a violation of a penal conflict of interest statute, while in this case the county asks to void a public contract solely on the basis of a desirable public policy (see *Hayes Int. Corp. v McLucas,* 509 F2d 247, 263, n 26). While public policy obviously abhors fraudulent conduct on the part of subcontractors in public work projects, the factual circumstances herein do not warrant the harsh remedy of total forfeiture of all sums paid to Babylon. Accordingly, the county's sixth counterclaim was properly dismissed.

■ The county's seventh counterclaim seeks recovery of actual and punitive damages caused by Clearview's criminal conduct. Upon review, it is clear that the counterclaim fails to state a cause of action because it does not allege that the county duly performed all conditions of the contract to be performed by it (*United Interchange v Aragoni,* 17 AD2d 1004; see, generally, 22 NY Jur 2d, Contracts, § 380, p 285). Accordingly, the seventh counterclaim must be dismissed (CPLR 3211, subd [a], par 7). However, in view of the fact that the dismissal is for a defect in pleading only, the dismissal of the seventh counterclaim is without prejudice to an appropriate application by the county to

Special Term for leave to replead this cause of action (CPLR 3211, subd [e]; *Renel Constr. v Brooklyn Coop. Meat Distr. Center,* 59 AD2d 391).

■ Special Term also dismissed the county's third counterclaim which seeks to recover actual damages against Babylon occasioned by the latter's failure to complete the contract by the agreed-upon completion date. Special Term held that this claim for relief is barred under the liquidated damage clause of the parties' contract. We disagree. As a general rule, a party's exclusive remedy for the recovery of damages caused by the delay in the completion of a construction contract is pursuant to the contract's liquidated damage clause. But where the delays are caused by the mutual fault of the parties, the liquidated damage clause is abrogated and the party must resort to recovery for actual damages (*Mosler Safe Co. v Maiden Lane Safe Deposit Co.,* 199 NY 479; *Village of Canton v Globe Ind. Co.,* 201 App Div 820; *Holland Torpedo Boat Co. v Nixon,* 61 Misc 469). Accordingly, the county is entitled to seek, as alternative relief to liquidated damages, recovery of the actual damages caused by Babylon's failure to timely complete its obligations under the contract.

Upon review of the county's third counterclaim, however, we find it to be defective in two ways. First, contrary to the county's position, the first and third counterclaims are not pleaded in the alternative (CPLR 3014). Alternative pleading is necessary, since if the liquidated damages are deemed enforceable, the county will not be entitled to recover actual damages in addition thereto. Secondly, the county again failed to plead due performance of the contract on its part (*United Interchange v Aragoni, supra*). In view of these pleading defects, the county's third counterclaim must be dismissed, but without prejudice to an appropriate application to Special Term for leave to replead this cause of action (CPLR 3211, subd [e]).

■ Finally, Special Term dismissed the county's eighth counterclaim asserted against the named sureties of Babylon's performance bond. Special Term determined that the county failed to declare the performance bond in default as required by the terms thereof. In addition, Special Term held that the counterclaim sought recovery in excess of the

liability provisions of the bond because the sureties' liability was limited to the cost of completion of the contract in the event Babylon defaulted thereunder. We disagree and accordingly provide for reinstatement of the eighth counterclaim. In the first instance, the performance bond does not contain an express requirement that the county serve a prelitigation notice of default upon the sureties. While the bond does require that the county declare the bond in default, this provision was satisfied by the county's allegation in its counterclaim stating, "the Performance Bond is in default".

Secondly, the terms of the performance bond do not limit the sureties' liability solely to the cost of completion of the contract. The bond incorporates by reference the terms of Babylon's contract. In view thereof, and in the absence of any language to the contrary, the sureties' liability under the bond would appear to be coextensive with Babylon's liability under the contract. Since a triable issue of fact exists as to the parties' intention on this point, the dismissal of the eighth counterclaim was premature.

BRACKEN, J. P., BROWN, NIEHOFF and BOYERS, JJ., concur.

Order of the Supreme Court, Suffolk County, dated September 22, 1983, modified, on the law, and the facts, by (1) deleting the provisions which granted those branches of plaintiff's motion which sought dismissal of the County of Suffolk's eighth counterclaim and twenty-third affirmative defense, and substituting therefor provisions denying those branches of the motion and (2) adding a provision granting the county leave to replead its third and seventh counterclaims (CPLR 3211, subd [e]). As so modified, order affirmed insofar as appealed from, without costs or disbursements.