DEBORAH A. BATTS, United States District Judge.
Plaintiffs James Saint-Amour ("Saint-Amour") and Alena Ivleva a/k/a Jerrra Blues, doing business as Satorii, bring this class action on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") against Defendants The Richmond Organization, Inc. ("TRO") and Ludlow Music, Inc. ("Ludlow") (collectively, "Defendants"). Plaintiffs challenge Defendants' protectable copyright interest in the American folk song "This Land is Your Land" (the "Song" or "This Land").[1] Plaintiffs seek a declaratory judgment that Defendants' copyright of the Song is invalid and that the Song is in the public domain. They also seek injunctive relief and damages pursuant to various claims under federal copyright law and New York state law.
Before the Court is Defendants' Motion to Dismiss Plaintiff's Class Action Complaint for lack of subject matter jurisdiction and for failure to state a claim. (ECF No. 17.) For the following reasoning, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.
I. BACKGROUND
a. Factual Background
The following facts are drawn from the Complaint (ECF No. 6) and are assumed true for purposes of the instant Motion. Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).
i. Origins of the Song
According to Plaintiffs, the melody of This Land is substantially identical to that of a Baptist gospel hymn from the late 19th or early 20th century, which has been known by various names, including "Fire Song." (Id. ¶¶ 10; 19.) In 1940, the American folk singer Woody Guthrie ("Guthrie") heard "Fire Song," or some variation of it, and copied the melody for use with his own original lyrics. (Id. ¶¶ 19-22.) The lyrics Guthrie wrote in 1940 were as follows:
This land is your land, this land is my land From California to the New York Island, From the Redwood Forest, to the Gulf stream waters, This land was made for you and me.
As I went walking that ribbon of highway And saw above me that endless skyway, And saw below me the golden valley, I said: This land was made for you and me.
I roamed and rambled and followed my footsteps To the sparkling sands of her diamond deserts, And all around me, a voice was sounding: This land was made for you and me.
Was a high wall there that tried to stop me A sign was painted said: Private Property, But on the back side it didn't *282 say nothing - This land was made for you and me.
When the sun come shining, then I was strolling In wheat fields waving and dust clouds rolling; The voice was chanting as the fog was lifting: This land was made for you and me.
One bright sunny morning in the shadow of the steeple By the Relief Office I saw my people - As they stood hungry, I stood there wondering if This land was made for you and me.
("1940 Lyrics")(Id. ¶ 22.) However, Guthrie did not publish the Song until 1945.[2]
ii. Disputed Copyright Claims
In April, 1944, Guthrie recorded This Land for Moses Asch, the owner of Folkways Records. (Id. ¶ 23.) In 1945, Guthrie wrote and published a songbook entitled "Ten 10 of Woody Guthrie's Songs Book One," ("10 Songs") (Id. ¶ 24.) Guthrie offered 10 Songs for sale to the general public. (Id. ¶ 25.) The songbook contained printed instructions about how to order additional copies of the book: "For more copies of this song book: Woody Guthrie, 3520 Mermaid Avenue, Brooklyn, 24, New York." (Id. )
Although 10 Songs was never registered with the United States Copyright Office ("Copyright Office"), the front cover of 10 Songs contained the following copyright notice: "Copyright 1945 W. Guthrie." (Id. ¶ 26.) The melody and lyrics for This Land, together with the notation "Words and music by W. Woody Guthrie," were printed on page 8 of 10 Songs as follows:
THIS LAND IS YOUR LAND, THIS LAND IS MY LAND FROM THE REDWOOD FOREST TO THE NEW YORK ISLAND THE CANADIAN MOUNTAIN, TO THE GULF STREAM WATERS THIS LAND IS MADE FOR YOU AND ME.
AS I GO WALKING THIS RIBBON OF HIGHWAY I SEE ABOVE ME THIS ENDLESS SKYWAY AND ALL AROUND ME THE WIND KEEPS SAYING: THIS LAND IS MADE FOR YOU AND ME.
I ROAM AND I RAMBLE AND I FOLLOW MY FOOTSTEPS TILL I COME TO THE SANDS OF HER MINERAL DESERT THE MIST IS LIFTING AND THE VOICE IS SAYING: THIS LAND IS MADE FOR YOU AND ME.
WHERE THE WIND IS BLOWING I GO A STROLLING THE WHEAT FIELD WAVING AND THE DUST A ROLLING THE FOG IS LIFTING AND THE WIND IS SAYING: THIS LAND IS MADE FOR YOU AND ME.
NOBODY LIVING CAN EVER STOP ME AS I GO WALKING MY FREEDOM HIGHWAY NOBODY LIVING CAN MAKE ME TURN BACK THIS LAND IS MADE FOR YOU AND ME.
("1945 Lyrics")(Id. ¶ 27.)
In 1951, with permission from Guthrie, Folkways Records released a phonograph entitled "This Land is My Land: A Collection of American Folk Songs," which included a recording of Guthrie performing This Land. (Id. ¶ 30.) The lyrics were printed on the liner notes without any copyright notice as follows:
This land is your land, this land is my land. From California to the New York island, From the redwood forest to the *283 Gulf Stream waters, This land was made for you and me.
As I went walking that ribbon of highway, I saw above me that endless skyway, I saw below me that golden valley, This land was made for you and me.
I roamed and rambled, and I followed my footsteps, To the sparkling sands of her diamond deserts, And all around me a voice was sounding, This land was made for you and me.
When the sun come shining, then I was strolling, And the wheat fields waving, and the dust clouds rolling, A voice was chanting as the fog was lifting, This land was made for you and me.
This land is your land, this land is my land. From California to the New York island, From the redwood forest to the Gulf Stream waters, This land was made for you and me.
When the sun come shining, and I was strolling, The wheat fields waving, the dust clouds rolling, A voice was chanting and the fog was lifting, This land was made for you and me.
("1951, 1956, & 1961 Lyrics") (Id. ¶ 31.)
On March 30, 1956, Defendant Ludlow filed an Application for Registration of a Claim to Copyright (Reg. No. EU432559) (the "1956 Application") for an unpublished work with the Copyright Office. (Id. ¶ 33.)[3] Ludlow is a wholly-owned subsidiary of Defendant TRO. (Id. ¶ 5.)
That same year - 1956 - Folkways Records, with permission from Ludlow or Guthrie, released a phonograph entitled "Bound for Glory: The Songs and Story of Woody Guthrie," which included a recording of This Land. (Id. ¶ 41.) The lyrics to the Song were printed on the liner notes without any copyright notice as follows:
This land is your land, this land is my land, From California to the New York Island, From the redwood forest to the Gulf Stream waters, This land was made for you and me.
As I went walking that ribbon of highway, I saw above me that endless skyway, I saw below me that golden valley This land was made for you and me.
I roamed and I rambled, and I followed my footsteps, To the sparkling sands of her diamond deserts, All around me a voice was sounding, This land was made for you and me.
When the sun come shining, then I was strolling, And the wheat fields waving, and the dust clouds rolling, A voice was chanting as the fog was lifting, This land was made for you and me.
This land is your land, this land is my land, From California to the New York Island, From Redwood Forest to the Gulf Stream Waters, This land was made for you and me.
When the sun come shining, and I was strolling, The wheat fields waving, the dust clouds rolling, A voice was chanting and fog was lifting, This land was made for you and me.
("1951, 1956, & 1961 Lyrics") (Id. ¶ 42.)
On December 15, 1958, Ludlow filed an Application for Registration of a Claim to Copyright (Reg. No. EP126345) (the "1958 Application") for a derivative work with the Copyright Office. (Id. ¶ 37.) The 1958 Application claimed a copyright in "new matter" consisting only of a new piano accompaniment. (Id. ¶ 38.)[4]
In 1961, with permission from Ludlow or Guthrie, Folkways Records re-released the *284 1951 phonograph record under the title "This Land is My Land, Songs to Grow On, Vol. 3: American Work Songs," which included the same recording of This Land as the 1951 phonograph record. (Id. ¶ 44.) The lyrics were printed in the liner notes without any copyright notice as follows:
This land is your land, this land is my land. From California to the New York island, From the redwood forest to the Gulf Stream waters, This land was made for you and me.
As I went walking that ribbon of highway, I saw above me that endless skyway, I saw below me that golden valley, This land was made for you and me.
I roamed and rambled, and I followed my footsteps, To the sparkling sands of her diamond deserts, And all around me a voice was sounding, This land was made for you and me.
When the sun come shining, then I was strolling, And the wheat fields waving, and the dust clouds rolling, A voice was chanting as the fog was lifting, This land was made for you and me.
This land is your land, this land is my land. From California to the New York island, From the redwood forest to the Gulf Stream waters, This land was made for you and me.
When the sun come shining, and I was strolling, The wheat fields waving, the dust clouds rolling, A voice was chanting and the fog was lifting, This land was made for you and me.
("1951, 1956, & 1961 Lyrics") (Id. ¶ 44.)
July 21, 1970, Defendant Ludlow filed an Application for Registration of a Claim to Copyright (Reg. No. EP276540) (the "1970 Application") for a published musical composition with the Copyright Office. (Id. ¶ 46.) Reg. No. EP276540 covers only a new guitar arrangement and "added words." (Id. ¶ 47.)[5]
On May 3, 1972, Defendant Ludlow filed an Application for Registration of a Claim to Copyright (Reg. No. EP301279) (the "1972 Application") for a published musical composition with the Copyright Office. (Id. ¶ 50.) The 1972 Application claimed a copyright in only "some words" as "new matter." (Id. ¶ 52.) Plaintiffs assert that the words claimed as "new matter" were the following two verses:
As I went walking I saw a sign there And on the sign it said "No Trespassing." But on the other side it didn't say nothing, That side was made for you and me.
In the shadow of the steeple I saw my people By the Relief Office I seen my people As they stood there hungry, I stood there asking Is this land made for you and me?
(Id. ¶ 52.)[6]
In all four of Ludlow's Applications (1956, 1958, 1970, 1972), Ludlow identified the title of the song as "This Land is Your Land" and Guthrie as the author of the Song's words and music. (Id. ¶¶ 34, 38, 47, 51.) Ludlow did not state in any of the four Applications that the Song had been published previously by Guthrie in 1945 or that the lyrics had been published previously by Folkways Records in 1951. (Id. ¶ 35, 39, 48, 54.)[7]
*285 According to Plaintiffs, Defendants claim they own the exclusive copyright to This Land. (Id. ¶ 6.)[8] Plaintiff's conclusion appears to be based at least in part on the fact that Ludlow is listed as the owner of the copyright to This Land on the website of non-party Harry Fox Agency.[9] (Id. ) Additionally, prior to this lawsuit, Defendants had asserted their exclusive ownership in the copyright to This Land against non-party Jib Jab Media, Inc. ("Jib Jab"). (Id. ¶ 14.) On July 23, 2004, Ludlow's counsel wrote to Jib Jab's counsel regarding Jib Jab's use of the Song. (Id. ) In that letter, Ludlow's counsel asserted: "Ludlow is the exclusive copyright owner of the classic folk song 'This Land is Your Land' written by the well-known folk artist Woody Guthrie." (Id. ) The letter also asserted that Jib Jab's use of the Song's melody and "the well-known lyrics 'This land is your land, this land is my land' and 'From California to the New York Island' " infringed Ludlow's copyright. (Id. )
iii. Plaintiffs' Use of the Song
Satorii is a band based in New York City. (Id. ¶ 56.) Saint-Amour is Satorii's drummer and Jerrra Blues is Satorii's lead singer. (Id. ) On February 18, 2016, Satorii provided Defendants with a Notice of Intention to Obtain a Compulsory License. (Id. ¶ 58.) Satorii paid Defendants $45.50 for a mechanical license to produce and distribute 500 copies of the Song as a digital phonorecord. (Id. ) Plaintiffs claim they did so involuntarily; Plaintiffs allege that they only entered into the mechanical license agreement and paid the $45.50 fee because Defendants had threatened to sue other users of the Song for copyright infringement in the past. (Id. ¶ 78.)
Plaintiffs recorded a version of the Song ("Version 1"), which is available for sale on iTunes and on other sites. (Id. ¶ 59.) Version 1 has the same melody as Guthrie's 1945 publication and includes the following lyrics:
This land is your land, this land is my land From California to New York Island From Redwood Forest to Gulf Stream Waters This land was made for you and me
As I was walking that ribbon of highway I saw above me that endless skyway I saw below me that golden valley This land was made for you and me
I've roamed and rambled and I followed footsteps In the sparkling sands of her diamond deserts And all around me their voice was sounding This land was made for you and me
Nobody living can ever stop me As I go walking my freedom highway Nobody living can make me turn back This land was made for you and me
This land is your land, this land is my land From California to New York Island From Redwood Forest to Gulf Stream Waters This land was made for you and me
(Id. ¶ 60.)
Satorii also recorded a different version of the Song using a different melody but the same lyrics ("Version 2"). (Id. ¶ 61.) Plaintiffs believe that Version 2 does not *286 qualify for a compulsory license because of the change in the Song's melody (Id. ) Plaintiffs allege that they cannot risk releasing Version 2 without permission from Defendants to create a derivative work. (Id. ) Because of Defendants' claim of copyright ownership in the Song, Plaintiffs could be subject to substantial statutory penalties, attorneys' fees, and costs if they were to release Version 2 without first obtaining a license to create a derivative work from Defendants. (Id. )
Additionally, Satorii wants to produce and release a music video of the Song ("Music Video"). (Id. ¶ 63.) Plaintiffs allege that they cannot release the Music Video without first obtaining a synchronization license from Defendants because doing so would expose them to substantial penalties, attorneys' fees, and costs. (Id. )
Plaintiffs filed this Class Action Complaint against Defendants on June 14, 2016. (ECF No. 6.) In Count I, Plaintiffs seek declaratory judgment under the Copyright Act that the Song is in the public domain, or that Defendants' registrations only cover a piano arrangement (1958 copyright for Reg. No. EP126345), a guitar arrangement (1970 copyright for Reg. No. EP276540), and two alternate verses (1972 copyright for Reg. No. EP301279). (Id. ¶¶ 74-88.) In Count II, Plaintiffs seek an injunction preventing Defendants' claim to ownership of copyrights in the Song and restitution for licenses of the Song. (Id. ¶¶ 89-93.) The Complaint also includes four state law claims: deceptive acts and practices in violation of New York General Business Law § 349 (Count III); breach of contract (Count IV); money had and received (Count V); and rescission for failure of consideration (Count VI). (Id. ¶¶ 94-123.)
On September 2, 2016, Defendants moved to dismiss Plaintiffs' Complaint. (ECF No. 17.) In their Motion to Dismiss, Defendants argue that the Class Action Complaint should be dismissed in its entirety because Plaintiffs lack standing. Furthermore, each of the state law claims should be dismissed as preempted by federal law.[10]
II. DISCUSSION
a. Subject Matter Jurisdiction
i. Legal Standard
Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." United States v. N.Y.C. Dep't of Hous., Pres. & Dev., No. 09 Civ. 6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012) (quoting Rhulen Agency, Inc. v. A.L. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) ).
ii. Standing Analysis
Plaintiffs' asserted basis for subject-matter jurisdiction is that they are entitled *287 under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., to seek declaratory relief arising under the Copyright Act, 17 U.S.C. §§ 101 et seq., and supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367. (Compl. ¶ 1.) Defendants allege that this Court lacks subject matter jurisdiction because Plaintiffs have not alleged an adequate basis for standing. (Defs.' Mem. at 6-14.) Defendants argue that there is no active case or controversy here because Plaintiffs have merely obtained a compulsory mechanical license and have not alleged any further contact with Defendants, much less a reasonable apprehension of a suit (or threatened suit) for copyright infringement. (Id. )
The Declaratory Judgement Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has stated that the DJA essentially subsumes Article III's case-or-controversy requirement, and the phrase "case of actual controversy" in the DJA refers to the type of "Cases" and "Controversies" that are justiciable under Article III. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).
Basically, the question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
Id. (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ).
In MedImmune, the petitioner claimed it was not required to make licensing payments on a patent that it claimed was invalid. Nevertheless, the petitioner continued to make the payments, under protest, to avoid the threat of paying treble damages, attorneys' fees, and having its sales enjoined. Id. at 118, 127 S.Ct. 764. The Supreme Court found that an actual controversy existed, holding that "the requirements of a case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 131, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). To have Article III standing, a plaintiff need not "destroy a large building, bet the farm, or ... risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights." Id. at 134, 127 S.Ct. 764. See also Klinger v. Conan Doyle Estate, Ltd., 755 F.3d 496, 499 (7th Cir. 2014) (finding an actual controversy existed and rejecting a ripeness challenge where author sought declaratory judgement before his book was completed.)
Although the MedImmune Court rejected the requirement that a plaintiff seeking declaratory judgment have a "reasonable apprehension of imminent suit," id. at 132 n. 11, 127 S.Ct. 764., it did not eliminate the requirement that the dispute be specific and real. Id. at 131, 127 S.Ct. 764 ("The fact that royalties were being paid did not make this a difference or dispute of a hypothetical or abstract character."). See also Bruce Winston Gem Corp. v. Harry Winston, Inc., No. 09 CIV 7352 JGK, 2010 WL 3629592, at *3 (S.D.N.Y. Sept. 16, 2010) (After MedImmune, "[e]stablishing that the plaintiff engaged in a course of conduct evidencing a definite intent and *288 apparent ability to commence use of the allegedly infringing marks remains a necessary requirement for a valid claim for declaratory judgment relief." (citation and internal quotations marks omitted)).
Here, Plaintiffs paid Defendants $45.50 for a mechanical license to produce and distribute a cover version of the Song. (Compl. ¶ 58.) Additionally, Plaintiffs have recorded and wish to release another version of the Song using a different melody but the same lyrics. (Id. ¶ 61.) Plaintiffs allege (without contradiction) that releasing Version 2 without a license to create a derivative work from Defendants would expose them to substantial penalties. (Id. ) Plaintiffs also wish to produce and release their Music Video and allege (again, without contradiction) that doing so without a synchronization license from Defendants would expose them to the substantial penalties (Id. ¶ 62.)
Although there is currently no "reasonable apprehension of imminent suit" against Plaintiffs, it was Plaintiffs' own acts which "eliminate[d] the imminent threat of harm." MedImmune, 549 U.S. at 128, 127 S.Ct. 764. Therefore, the dispute here is not hypothetical or abstract in character. As in MedImmune, Plaintiffs paid the mechanical license fee "involuntarily." Additionally, in recording Version 2 and demonstrating a desire to produce and release the Music Video, Plaintiffs have shown they have the "intent and apparent ability necessary to commence use" of the disputed copyright. Bruce Winston Gem Corp, 2010 WL 3629592 at *4.
The cases that Defendants cite are inapposite. Defendants here have not disclaimed ownership of the copyright, nor have they entered into a covenant not to sue Plaintiffs. Cf. Already, LLC v. Nike, Inc., 568 U.S. 85, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (defendant's unconditional and irrevocable covenant not to sue mooted plaintiff's action to have the defendant's trademark declared invalid); Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc., 890 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (broad language of defendant's unconditional and irrevocable covenant not to sue eliminated the possibility of litigation.) Unlike in Nike and Velvet Underground, litigation over the Song is likely to commence if and when Plaintiffs release Version 2 or their Music Video without obtaining a license to the disputed copyright.[11] Therefore, Plaintiffs have standing to pursue their claims.
Finding that Plaintiffs have standing to bring their claims, the Court now addresses *289 Defendants' argument that Plaintiffs' state law claims are preempted by federal law.
b. Preemption of State Claims
i. 12(b)(6) Legal Standard
For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has explained,
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."
Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556-57, 127 S.Ct. 1955 ). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955 ). The Supreme Court further stated,
In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.
Id. at 679, 129 S.Ct. 1937.
In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ; Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, 129 S.Ct. 1937, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, 127 S.Ct. 1955, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. at 555, 127 S.Ct. 1955. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).
ii. Preemption of State Law Claims Analysis
Defendants' motion seeks dismissal of Plaintiffs' state law claims as preempted by the Copyright Act. Those claims are for deceptive acts and practices in violation of New York General Business Law § 349 (Count III), breach of contract (Count IV), money had and received (Count V), and *290 rescission for failure of consideration (Count VI).
There is a two prong test for a preemption analysis. Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012). Section 301 of the Copyright Act preempts a state law claim if: "(i) the work at issue comes within the subject matter of copyright and (ii) the right being asserted is equivalent to any of the exclusive rights within the general scope of copyright." Id.
1. Subject Matter Requirement
The first prong - the subject matter requirement - is satisfied if "the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004). The scope of the subject matter is intended to be broad, and "includes all works of a type covered by sections 102 and 103." Forest Park, 683 F.3d at 430.
The subject matter of the Plaintiffs' claims is the Song. The Song is a musical composition and as such a paradigmatic work protected by the Copyright Act. 17 U.S.C. § 102(a)(2). Plaintiffs here argue that their state law claims do not assert any rights of the type protected by the Copyright Act. (Pls.' Opp. at 14.) This argument fails. The subject matter prong of the preemption test inquires only whether the work is of a type protected by the Copyright Act. It is. "A work need ... only fit into one of the copyrightable categories in a broad sense." Briarpatch, 373 F.3d at 305. The subject matter requirement is met when the work "falls within the ambit of copyright protection." Barclays Capital Inc. v. Theflyonthewall.com, Inc., 650 F.3d 876, 892 (2d Cir. 2011). Because Plaintiffs are challenging the validity of the copyrights in a song, which fits into the copyrightable category of musical works, the subject matter requirement is met.
2. General Scope Requirement
The second prong of the preemption analysis - the "general scope requirement" - inquires whether the rights being asserted through the state law claims are equivalent to a right protected by the Copyright Act. Briarpatch, 373 F.3d at 305. "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." Id.
[T]he state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim. To determine whether a claim is qualitatively different, we look at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced. Moreover, we take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim. Awareness or intent, for instance, are not extra elements that make a state law claim qualitatively different.
Id. at 305-06. See also We Shall Overcome Foundation v. The Richmond Organization, Inc., et. al, No. 16-cv-02725-DLC (S.D.N.Y. Nov. 21, 2016) (slip op) ("WSOF").[12]
*291 a. Count III: New York General Business Law § 349
In Count III, Plaintiffs assert a claim for deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 (Compl. ¶ 94-113.) To assert a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).
The Plaintiffs' GBL § 349 claim is preempted. The right being challenged through this claim is the very right protected by the Copyright Act - the right to restrict the performance and distribution of a copyrighted work. The Plaintiffs contend that the Defendants are deceiving the public by claiming to own a copyright to the melody and well-known lyrics of the Song. (Compl. ¶ 98-99.) Such a claim is not qualitatively different than the Plaintiffs' request for a declaration that the Defendants have no valid copyright. Accordingly, this claim is preempted as one that seeks to vindicate a right equivalent to the exclusive rights protected by the Copyright Act. See WSOF at 29-03 ( N.Y. Gen. Bus. Law § 349 claim preempted).
b. Count IV: Breach of Contract
In Count IV, Plaintiffs assert a claim for breach of contract. "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011). A contract claim may escape preemption if it seeks to vindicate rights, such as a promise to pay, that are qualitatively different from those included in the Copyright Act. See, e.g., Forest Park Pictures, 683 F.3d at 433-34. On the other hand, where the right asserted hinges essentially on a determination of whether the rights protected by the Copyright Act exist, the breach of contract claim is preempted. See 1 Nimmer on Copyright § 1.01[B][1](a) (contract claims alleging "nothing other than derogation of rights under copyright" are preempted).
The Plaintiffs' contract claim is preempted. The Plaintiffs allege nothing more than that the Defendants breached their contracts with the Plaintiffs because the Defendants "implicitly represented and warranted that they own the copyrights to the Song as licensed therein." (Compl. ¶ 115.) The claims that there was a failure of consideration and a breach of promise both rely on the alleged misrepresentation that the Defendants have a copyright. Accordingly, the breach of contract claim in this case simply reframes the single question presented in this litigation, that is, whether the Defendants' copyright is valid. See WSOF at 30-31 (breach of contract claim preempted).
c. Count V: Money Had And Received
In Count V, Plaintiffs assert a claim for money had and received by Defendants *292 which in equity belongs to Plaintiffs. The elements of the claim "money had and received" are: "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." Middle E. Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 906 (2d Cir. 1987) (citation omitted). "A cause of action for money had and received is one of quasi-contract." Melcher v. Apollo Med. Fund Mgmt. LLC, 105 A.D.3d 15, 959 N.Y.S.2d 133, 142 (1st Dep't 2013). Claims in quasi-contract or unjust enrichment in which the plaintiff "need not allege the existence of an actual agreement between the parties [are] not materially different from a claim for copyright infringement." Forest Park Pictures, 683 F.3d at 432 ; see also 1 Nimmer on Copyright § 1.01[B][1](g) ("[A] state law cause of action for unjust enrichment or quasi-contract should be regarded as an equivalent right and hence, pre-empted insofar as it applies to copyright subject matter.").
The Plaintiffs' claim for money had and received is preempted by the Copyright Act. The acts through which the Defendants received money belonging to the Plaintiffs are only unjust if the Defendants do not own the relevant portions of a copyright. This claim's element of "enrichment," therefore, does not create a qualitatively different claim than a claim that the Defendants do not possess a copyright. See Briarpatch, 373 F.3d at 306 (unjust enrichment claim preempted); WSOF at 28-29 (money had and received claim preempted).
d. Count VI: Rescission
The final state law claim is the claim for rescission. "The equitable remedy of rescission is to be invoked only when there is lacking complete and adequate remedy at law and where the status quo may be substantially restored." Sokolow, Dunaud, Mercadier & Carreras, LLP v. Lacher, 299 A.D.2d 64, 747 N.Y.S.2d 441, 446 (1st Dep't 2002) (citation omitted). "In order to justify the intervention of equity to rescind a contract, a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." Babylon Associates v. Suffolk Cty., 101 A.D.2d 207, 475 N.Y.S.2d 869, 874 (2d Dep't 1984) (per curiam). The effect of rescission "is to put the parties back in the same position they were in prior to the making of the contract." Holdeen v. Rinaldo, 28 A.D.2d 947, 281 N.Y.S.2d 657, 661 (3d Dep't 1967). "Rescission is an extraordinary remedy, appropriate only where the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 143 (2d Cir. 2000) (citation omitted).
The Plaintiffs' claim for rescission is preempted, for the reasons already explained in connection with the Plaintiffs' breach of contract claim. The claim for rescission is based entirely on the allegation that there was a failure of consideration because the Defendants have no valid copyright in the Song. See WSOF at 31-32 (rescission claim preempted).
III. CONCLUSION
For the reasons described above, Defendants' Motion to Dismiss the Complaint is GRANTED in part, and DENIED in part. Each of the state law claims is DISMISSED WITH PREJUDICE on the ground that they are preempted. Defendants are to answer the remaining copyright *293 claims of the Complaint within 30 days of the date of this Order.
SO ORDERED.

In their Complaint, Plaintiffs include three different versions of lyrics to the Song ("1940 Lyrics," "1945 Lyrics," and "1951, 1956, & 1961 Lyrics.") However, Plaintiffs do not distinguish between these variations and refer to all versions as the "Song."

The Court notes that the 1940 Lyrics differ significantly from the lyrics that Plaintiffs claim Guthrie published in 1945, 1951, 1956, and 1961. For example, the fourth and sixth verse from the 1940 Lyrics are absent in subsequent iterations. In the 1945 Lyrics, there are changes to every verse compared to the 1940 Lyrics, and the fifth verse in the 1945 Lyrics is almost entirely new. However, Plaintiffs do not explain these variations.

Plaintiffs do not specify which lyrics and melody this "unpublished work" covered under Registration Number EU432559, nor do Plaintiffs explicitly state whether the 1956 Application was granted.

Plaintiffs do not include the new piano accompaniment in their Complaint.

Plaintiffs' Class Action Complaint does not include the guitar arrangement or specify which words were added in Reg. No. EP276540.

Plaintiffs' assertion is based on the renewal of Reg. No. EP301279 on July 10, 2000. The Court notes that these two verses are similar, but not identical, to the fourth and sixth verses of the 1940 Lyrics.

Although Plaintiffs do not explicitly state that the Copyright Office granted each of Ludlow's four copyright applications in 1956, 1958, 1970, and 1972, Defendants do not dispute this fact.

Defendants do not disclaim ownership of the copyright in the Song. (Defs.' Mem. at 12, 13.) However, neither party has specified which lyrics are covered by the disputed copyright.

Non-party Harry Fox Agency is a provider of rights management, licensing, and royalty services for the music industry. (Id. ¶ 6.) Harry Fox Agency licenses, collects, and distributes royalties on behalf of musical copyright owners, and provides a variety of online tools to help music publishers manage their catalogs. (Id.)

In their Motion to Dismiss, Defendants also argue that Section 507(b) of the Copyright Act requires claims to be maintained within three years of the accrual of the claim. (Defs.' Mem. at 24-25.) Defendants do not argue that Plaintiffs' individual claims are barred by the Copyright Act - only that the claims of absent class members must be limited to three years. This statute of limitations argument is more properly addressed during class certification rather than at this motion to dismiss stage. Therefore, the Court declines to address this argument here.

In a suit for declaratory relief for a declaration of non-infringement, the burden of proving infringement remains with the licensee, even if that licensee is the nominal defendant. Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 194, 134 S.Ct. 843, 187 L.Ed.2d 703 (2014) ("when a licensee seeks a declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee."); 3 Nimmer on Copyright § 12.01 (2018) ("One imagines that the same considerations [in Medtronic ] govern copyright claims."); Marya v. Warner/Chappell Music, Inc., 131 F. Supp. 3d 975, 983-84 (C.D. Cal. 2015) (applying Medtronic to a similar declaratory judgment copyright non-infringement case and concluding that the defendants bear the burden of proof). Here, Defendants have artfully avoided stating whether, in their view, Plaintiffs would be infringing on their copyright if Plaintiffs were to release Version 2 or the Music Video. In doing so, Defendants seek to press their standing argument while preserving any copyright infringement claim they might have against Plaintiffs. Defendants cannot have it both ways. The burden is on Defendants to show they either do or do not possess the copyright to the Song. Already, LLC v. Nike, Inc., 568 U.S. 85, 88, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (placing the burden on the (defendant) manufacturer to show it could not reasonably be expected to resume its enforcement efforts against the (plaintiff) competitor).

Plaintiffs' state law claims in this Action are virtually identical to the state law claims brought by the plaintiffs in We Shall Overcome Foundation v. The Richmond Organization, Inc., et. al, No. 16-cv-02725-DLC (S.D.N.Y. Nov. 21, 2016) (slip op) ("WSOF"). Like the Plaintiffs here, the plaintiffs in WSOF brought state law claims for alleged deceptive acts and practices under New York Gen. Bus. Law ("GBL") § 349 (Count 3), Breach of Contract (Count 4), Money Had and Received (Count 5), and Rescission (Count 6). As here, plaintiffs in WSOF also brought a claim for a Declaratory Judgment regarding the validity of Defendants' copyright in the song "We Shall Overcome" (Count 1), and a separate claim for Declaratory and Injunctive Relief, seeking to prevent Defendants' claim to ownership of copyrights in the song and restitution for licensees (Count 2). Plaintiffs in both cases are represented by the same counsel, and the state law claims in both cases are substantively the same.